I heard earlier that the acoustics are questionable in here, so I'm hoping you can hear me. My name is David Linden, and I'm from Napa. At the time I represented Tamara Shaw, I had social security disability claims, and now I've returned to my roots back in the Bay Area. I've got a question about this case. The basic argument that can be made in this classification of case that you put to us in the blue brief is the difficulty in our circuit of the Social      With respect to minute three, it was on their accusationinteresting   So that's a 졘They didn't understand that there was conflict in the record between cleaning physicians. But in this case,it looked to me as though there are other treating physicians who contradict the treating physician that said she's totally disabled. None of which I'm aware, Your Honor. Is that right? Maybe I'm mistaken. No, you're not. I had thought that there was conflict in the record between treating physicians. Dr. Jordan, Dr. Chandler, Dr. Bauer. I don't contradict Dr. Dillon. Sorry. Dr. Chandler is a physician to whom Dr. Dillon sent the claimant for an evaluation as to the cause of her pain. That's what I understood. But that's a treating physician. A treating physician doesn't just mean your internal medicine specialist or the first doctor you go to or your general practitioner. Absolutely. It's the physicians who treat you as opposed to the physicians that may be appointed by an insurance company or the Social Security Administration or somebody else to do what they call an independent medical. Correct. Dr. Chandler, the claimant, Tamara Shaw, was sent to Dr. Chandler for the purpose of trying to help locate the cause of her pain and provide further definition of it. I think she was a neurologist. And she reviewed the records. She came up with an opinion as to the cause of the pain and returned Ms. Shaw to her primary doctor, Dr. Dillon. But in doing so, she gave an opinion that the claimant appeared to be able to work. So there's something that happened there that's in opposition to what Dr. Dillon said, that she wasn't able to work. If she said that, Your Honor, I've certainly missed it in the record. This is Dr. Chandler's report? Yes, Dr. Chandler. Could you remind us where that report is, if you happen to recall? If I get it from the desk, I'll be happy to. That's okay. I remembered the same thing. And ordinarily, your treating physician sends you to a specialist of some sort when the treating physician wants some more specialized advice on how to treat you. That's what it looked like. I have Dr. Chandler's report in front of me. It's at the transcript, pages 385, 386. She concludes at this point, maybe this is somewhere else in here and I'm missing it. She concludes, at this point, I would not consider Ms. Shaw to be a surgical candidate. It may be beneficial to treat her depression. I've talked to her about weight loss and how important that would be. However, weight loss would be difficult in her situation. I don't see anything in there regarding her ability to work at the time of the examination. She didn't have anything here that he sees that would prevent her from working. I'm sorry, is that in Dr. Chandler's report? Yeah, depression, but he's even kind of iffy about whether she should be treated. Normal electromyogram, normal nerve conduction studies. On physical examination, the claimant had exquisite right sacroiliac joint tendons, and in fact has a trigger point. But he couldn't find an objective basis for it. He couldn't find or she couldn't find an objective basis for it. She did not dismiss the claimant's, she did not dismiss Tamara Shaw's complaints of pain. She referred her back to her doctor with a suggestion as to possible methods of care for it. Dr. Dillon has been treating Tamara for many years, primarily focused on her pain. She's not a surgical, Tamara Shaw was not a surgical candidate, but she has physical findings of the sort that can cause a person pain. It may not cause everybody pain, but it certainly has caused this young woman pain. And as a result of that pain, she cannot work. Dr. Chandler didn't say that, did he? No, Dr. Dillon said that. And then Dr. Allen said that there's a middle-level likelihood that she tends to exaggerate her perception and report of bodily problems, and that it is unlikely that all her physical complaints are due to genuine organic pathology. And that may very well be true, Your Honor. She was diagnosed by Dr. Bauer with having an adjustment disorder, and one of the impacts of an adjustment disorder is that you tend to have an exaggerated response to stressors, such as in her immediate case was a threat of injury at work, and beyond that she's had the stressor of not being able to work, not having any money, and having to deal with her chronic pain. She is not exaggerating intentionally. She is not malingering. No doctor that has seen and examined this woman, no doctor that has reviewed the medical file has concluded that she is intentionally exaggerating or malingering her symptoms. She has a walker, but no doctor told her to get a walker? Yes, she has a walker that she uses when she's outside the home. Did any doctor prescribe a walker? I believe Dr. Dillon did. So you can proceed to save time, whatever you like. That covers it. You can ask me a question right now. Well, I would like to. We've talked a bit about, well, actually we've covered both of the issues that I wanted to talk about, but I'd like to address them a little further. Regarding the claimant's credibility, the judge gave several reasons for, the administrative law judge gave several reasons for giving her a reduced credibility, one of which was that there was a finding in Dr. Bauer's report or a suggestion in Dr. Bauer's report that she might be malingering. As I've just said a moment ago, Dr. Bauer, in fact, did not conclude that she was malingering. He concluded that she had an adjustment disorder, and no doctor has concluded that she's malingering. And therefore, there's no basis for the judge to find that she may be malingering or intentionally exaggerating her symptoms. And without that, she should be believed. What did we do with Dr. Bauer, the psychiatrist that Dr. Dillon sent her to? Dr. Bauer, excuse me, I'm sorry, Your Honor, Dr. Bauer was not involved with Dr. Dillon. He said that there's no total or partial disability from a psychiatric point of view. That's correct. Dr. Bauer was a physician to whom the workers' compensation insurance company sent her several months after she was faced with a threatened threat from a client of the social services agency for which she was working in Trinity County. And he reviewed the residuals from that threat and concluded that there was no impairment significant enough to render her disabled from that threat, although he diagnosed an adjustment disorder and gave her a GAF of 68. Dr. Bauer has nothing to do with Dr. Dillon. He was related to a workers' compensation claim that was a claim for a psychic disability. Dr. Jordan concluded that she can walk without any assistance device, that standing, walking, and sitting should be limited to six hours with customary breaks, that she should be able to lift 25 pounds to 50 pounds occasionally. That's the usual rule for sedentary occupation. I'm sorry, that's what? That's the usual test for sedentary occupation. That is, she can work, but at a sedentary occupation. Actually, that description of activities that Dr. Jordan concluded she could do is typical for medium exertional level work. Sedentary level work is seated six hours a day, walking up to two hours a day, lifting and carrying under 10 pounds during the day. Now, he was a doctor. She was sent to by Dr. Dillon? No, Dr. Jordan is a physician to whom the Social Security sent the claimant for an evaluation. It was a one-time evaluation. Unfortunately, my time is up. I haven't been able to get to the critical point here. We have your brief, of course. Yes. Thank you, Counsel. Counsel? Good afternoon, Your Honors. May it please the Court, Mary Parno for Michael J. Astrew, Commissioner of Social Security. The ALJ's decision in this matter is supported by substantial evidence, is free of legal error, and should be affirmed. This is a Title II case. Help us out. Go through what you have in the record that would allow Dr. Dillon's opinion  Certainly, Your Honor. Excerpt pages would be nice. Dr. Dillon's assessments were dated after a claimant's date last insured of December 31, 2001. She had an assessment of February 2002 and an assessment of September 2002. Both assessments were on check-a-box forms which did not contain detailed clinical diagnostic support. The forms, in fact, were inconsistent with each other. On the first form, the February 2002 form, which you'll note is at page 473, she listed that claimant could not perform sedentary work since April of 2001. On the second form, seven months later, she listed that claimant could not perform sedentary work as of her alleged onset date of January 2000. The September 2002 assessment also included an attachment which listed claimant's low back pain. Counsel? Yes, Your Honor. What you've said so far is that Dr. Dillon just checked a box and gave us different assessment dates. Is there any other reason that Dr. Dillon's view should not be given controlling effect? Yes, Your Honor. Her assessments were not supported by her own progress notes, and they were not supported by other evidence of record. Besides impeachment of Dr. Dillon's opinion, is there anything else? Do any of the other doctors who treated her contradict Dr. Dillon? Do you have anything else? Certainly, Your Honor. Dr. Chandler was referred, Dr. Dillon referred the claimant to Dr. Chandler. We just looked at Dr. Chandler's letter at 385 of the excerpts. She is a neurosurgeon. But it doesn't say in so many words, I disagree with Dr. Dillon. It just describes the lack of objective support for the symptoms. You're correct, Your Honor. She lists the claimant as non-surgical candidate because of the largely normal findings on examination. The state agency physicians also reviewed all of claimant's records up until December 18th of 2001. Do you have anything but Chandler? Dr. Jordan, the state agency physicians. Any other treating physicians? If we move to the psychological side, we have Dr. Bower, Dr. Allen. What is the best you've got from another doctor who treated this lady that supports the ALJ's discounting of Dr. Dillon? There isn't another treating physician's opinion that directly contradicts Dr. Dillon's finding that she cannot perform sedentary work. However, the ALJ credited a lot of claimant's complaints. He partially credited her entire testimony by reducing Dr. Jordan's residual functional capacity and the state agency's residual functional capacity to find that she could only perform sedentary work with a sit-stand option. For a 40-year-old individual, that's a significant concession on the ALJ's part. He believes she did have pain. We're not negotiating. I don't care if he made a concession or not. All I want to know is, Dr. Dillon says she's disabled, or at least checks a box saying she's disabled. What is there in the record that the ALJ could, under the regulation, weigh against that to deny a controlling effect? Other than impeachment, Your Honor, there is no directly contradicting evidence from another treating source. And what about the non-treating sources? Dr. Jordan opined that she could perform medium work. She noted that, aside from tenderness, there was no spasm, negative straight leg raising tests, grossly full range of motion, and she was capable of medium work. These findings are significantly different from the clinical findings that Dr. Dillon arrived at. When you review Dr. Dillon's reports, she notes a lot of claimant's pain complaints, but largely doesn't detail the diagnostic clinical findings that would be required to credit her opinion. Counsel, what's your best case authority to support the argument that examining physician's opinions can be used to reject a treating physician's opinion? Morgan Armstrong? When a treating physician's opinion is unsupported, as is this case, where we have just her form of stating she cannot perform sedentary work, I believe Thomas. What is Dr. Dillon's specialty? I just wondered, it has on her letter, North Valley Breast Clinic, Comprehensive Breast Care. Is that her specialty? It's on the top of the letterhead. I did not realize that, sir. And the only report we have of Dr. Dillon is the checkoff box?  In her address notes, they do indicate that claimant responded to some conservative treatment, but they don't detail the kind of findings you would expect where someone was basically bedridden and unable to walk. Did she provide any report indicating the disability she had in the checkoff report? Dr. Dillon did not give us any indication of what claimant was capable of performing, other than just stating what she was incapable of performing. She also, in fact, despite noting that claimant would be unable to perform sedentary work, noted that her gait was normal in December of 2001. And I'd like to go back to the issue of the walker. I could find no evidence that the walker was ever prescribed. I looked through appellant's brief to determine if there was any summary of evidence. Did you see the record? Yes, I did, Your Honor. Is there a prescription for the walker or not? I did not see the prescription for the walker anywhere. We just heard your adversary say that Dr. Dillon prescribed it. I understand. If he could cite your transcript page, I'd like to see it. And, you know, I hadn't noticed what Judge Wallace did. Dr. Dillon is a breast specialist. Is there other material in the record that would help us on this? There was evidence that she had a familial history of breast cancer and that she was being evaluated for a possibility of an increased risk of breast cancer. But I did not realize that Dr. Dillon was a specialist in breast cancer, and that was why she was treating her. I would add, Your Honor, that if you look at Dr. Dillon's note on transcript page 265, in May of 2000, she opines that claimant is capable of standing and walking no more than 10 hours a day and lifting no more than 25 pounds. That's directly consistent with her second assessment form that says she couldn't perform sedentary work as of January 2000. Twenty-five pounds and 10 hours walking? Five hours standing, five hours walking, for a total of 10 hours. If there are no further questions, Your Honors, I'd like to reserve my time. Well, you don't get a rebuttal. Pardon me. Then I would like to conclude in just stating that the ALJ probably considered all of the medical evidence and claimant's credibility. The ALJ utilized the services of a vocational expert to determine that claimant could return to her past relevant work as an eligibility worker and a loan clerk. It was plaintiff's burden to prove that she could not perform work at her past relevant work before December 31st of 2001. Claimant did not sustain that burden. The ALJ properly found that she could perform her past relevant work. His decision was based on substantial evidence and is free of legal error, and the Commissioner respectfully requests that it be affirmed. Thank you, Counsel. Thank you, Your Honors. Counsel, although you went through all your time, we have this disagreement about whether Dr. Dillon prescribed her walkers. If you want to stand up for 30 seconds, give rebuttal, mention a citation on that to the record, it might be helpful. Over at the podium so it will record. Your Honor, I found in my brief look pretty extensive records. I have not found a prescription for a walker. I'm aware that Dr. Dillon was aware of the walker, but I don't know for a fact that she prescribed it. Thank you, Counsel. Shaw v. Aspen is submitted. Thank you, Your Honor.
judges: Wallace, Kleinfeld, Rawlinson